BRYAN CAVE LLP, #00145700
Jay A. Zweig, #011153
Melissa R. Costello, #020993
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
Telephone: (602) 364-7300
Fax: (602) 716-8300
jay.zweig@bryancave.com
melissa.costello@bryancave.com

and

MCAFEE & TAFT, A Professional Corporation
Sam L. Fulkerson, OBA #14370
Lauren Barghols Hanna, OBA #21594
2 Leadership Square, 10th Floor
211 N. Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 552-2343
Fax: (405) 722-2343
sam.fulkerson@mcafeetaft.com
lauren.hanna@mcafeetaft.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| PRN MEDICAL SERVICES, LLC d/b/a SYMBIUS MEDICAL, a Delaware Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL NEILSON AND JANE DOE NEILSON, husband and wife; JOHN PEARCE AND JANE DOE PEARCE, husband and wife; MARVELYN STUBBS AND JOHN DOE STUBBS, wife and husband; KIMBERLY CHOATE AND JOHN DOE CHOATE, wife and husband; | Case No. 2:14-cv-01047 (GMS)<br><br>**PLAINTIFF'S APPLICATION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS MICHAEL NEILSON, KIMBERLY CHOATE AND MARVELYN STUBBS SHOULD NOT BE HELD IN CIVIL CONTEMPT** |

| | |
|---|---|
| 1 | MICHAEL HALEY, an individual, and WILMINGTON MEDICAL SUPPLY, INC., |
| 2 | |
| 3 | Defendants. |
| 4 | |

Pursuant to Fed. R. Civ. P 37(b)(2)(A), PRN Medical Services, LLC d/b/a Symbius Medical ("Symbius") moves for an order to show cause why Defendants Michael Neilson, Kimberly Choate, and Marvelyn Stubbs, all former Symbius sales representatives, should not be held in civil contempt for substantial violations of the Temporary Injunction Order issued by this Court on June 24, 2014 (the "Order") [Order, Doc. # 34].

On June 24, 2014, this Court ordered each of the individual Defendants to return all Symbius documents in Defendants' possession or control by July 2, 2014, with any supplemental disclosure and forfeiture of materials by July 18, 2014. Additionally, this Court ordered Defendants to create digital images of any electronic devices used during the relevant time period at Symbius' expense and to then retain these devices pending future discovery and protection orders. *Id.*

Neilson, notwithstanding, has failed to disclose and produce for imaging electronic storage devices to which he transferred significant numbers of documents from his Symbius computer in the days leading up to his resignation. Neilson, Stubbs and Choate failed to disclose and produce highly-confidential Symbius patient and referral spreadsheets that they transferred to their personal accounts in the days prior to their resignations. Additionally, Neilson and Stubbs failed to disclose their "Dropbox" electronic storage accounts in discovery and have not produced the Symbius documents that they each transferred to those accounts on the dates of their resignations.

Michael Neilson, Kimberly Choate, and Marvelyn Stubbs have failed to substantially comply with their independent production obligations under the Order and should be required to show cause why they should not be held in civil contempt. This Motion is supported by the attached Memorandum of Points and Authorities.

McAfee & Taft, A Professional Corporation

By: s/Lauren Barghols Hanna
Sam L. Fulkerson, OBA #14370
Lauren Barghols Hanna, OBA #21594
(admitted *pro hac vice*)
2 Leadership Square, 10th Floor
211 N. Robinson
Oklahoma City, Oklahoma 73102

and

BRYAN CAVE LLP, #00145700
Jay A. Zweig, #011153
Melissa R. Costello, #020993
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406

Attorneys for Plaintiff

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Defendants Choate, Neilson and Stubbs Should Be Held in Civil Contempt

### A. Legal Standard for Civil Contempt

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply."[1] *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Federal district courts have broad discretion in imposing sanctions for civil contempt. *See Int'l Union, Un. Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994). Civil contempt must be proven by clear and convincing evidence; however, the standard of proof as to the amount of damages in a civil contempt action is preponderance of the evidence. *See U.S. v. Powers*, 629 F.2d 619, 626 n.6 (9th Cir. 1980); *U.S. v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999). A party seeking civil contempt sanctions must

---

[1] Where the purpose of contempt is "remedial, i.e. to compensate for the costs of the contemptuous conduct or to coerce future compliance with the court's order, the contempt order is civil," not criminal. *Reno Air Racing Ass'n, Inc.*, 452 F.3d at 1126.

establish that: (1) the respondent violated a court order; (2) the noncompliance was more than a technical violation; and (3) the respondent did not take reasonable steps to ensure compliance. *See In re Dual-Deck,* 10 F.3d at 695.

**B.   Relevant Factual History**

On February 3, 2014, Defendants Neilson and Choate (along with Defendants Michael Haley, and John Pearce) voluntarily resigned their employment as outside sales representatives/territory managers with Symbius, a national durable medical equipment supplier, to go to work for Symbius' competitor, Defendant Wilmington Medical Supply, Inc. ("Wilmington"). Stubbs resigned her employment to go to Wilmington on February 17, 2014. Defendants' Employment Agreements expressly prohibited Defendants from using, divulging, disclosing, or copying any of Symbius' confidential or proprietary information, including the names, buying habits or practices of any of its customers and referral sources. *See* Employment Agreements, Ex. 1. Defendants' Employment Agreements also explicitly required that all Symbius documents be immediately returned to Symbius upon termination of employment. *Id.*

Within a week of Defendants' resignations, Symbius' outside counsel sent each Defendant a letter requesting that the Defendants: (1) comply with the restrictions set forth in Defendants' Employment Agreements and (2) return any Symbius documents that might remain in their possession after their resignations. Letters to Defendants, Ex. 2. Approximately a week of receiving these letters from Symbius' counsel, each of the five individual defendants (including Neilson, Choate and Stubbs) falsely asserted, in writing, that they did not have any Symbius confidential documents in their possession and that they fully intended to comply with the terms of their Employment Agreements. Nielson 2/14/14 email, Ex. 3, Choate 2/18/14 email, Ex. 4, Stubbs 2/26/14 email, Ex. 5.

In April 2014—only two months after Defendants' resignations—Symbius filed this lawsuit, after receiving reports from Symbius referral facilities that Defendants or

certain manufacturer representatives (acting as agents for Defendants) were improperly diverting business away from Symbius. Along with a copy of the Complaint, Symbius served each Defendant with a "spoliation letter." *See* Spoliation Letters, Ex. 6.

In May 2014, Symbius retained a forensic IT firm to conduct a forensic analysis of the Symbius equipment that Defendants had returned to Symbius after their resignations. Symbius found strong evidence in its preliminary forensic reports that Defendants had, directly contrary to their earlier written denials of such conduct, pulled thousands of highly-confidential patient files and referral source documents off of the Symbius servers in the days and hours surrounding their resignations from Symbius.

On June 20, 2014, Symbius undertook the substantial expense of drafting and filing its Motion for Temporary Restraining Order and Preliminary Injunction [Doc. #19]. The exhibits attached to Symbius' Motion provided clear evidence of Defendants' theft and retention of highly-confidential Symbius documents in the days just before (and in Choate's case, after) their resignations. Symbius' Motion sought, in part, the return of all Symbius documents still in Defendants' possession, so that Symbius could determine the extent of Defendants' theft and properly mitigate this wholesale theft of patient confidential health documents and competitive referral source information.

On June 24, 2014, literally the day after Neilson, Choate and Stubbs each filed an Answer unequivocally (and, again, falsely) denying that they had retained <u>any</u> Symbius confidential documents after their resignations, Defendants' counsel appeared for the hearing on Symbius' Motion for Preliminary Injunction and admitted, contrary to his clients' assertions, to this Court that certain Defendants <u>had</u> in fact taken and retained Symbius documents (despite their prior written denials to this Court). *See* 6/24 Trans., Ex. 7; Answers, [Doc. # 25 (Neilson), #27 (Choate) , and #28 (Stubbs)].

This Court ordered that "Defendants are mandated to return all of Symbius' files

in Defendants' possession or control by July 2, 2014, with any supplemental disclosure and forfeiture of materials by July 18, 2014" (the "Order") [6/24/14 Order, Doc. #34]. Defendants were also ordered "to immediately create a digital image of all of the Defendants' electronic devices." Symbius was ordered to pay for the costs of that imaging. *Id.* To address Symbius' concerns, this Court noted at the hearing that "if [Symbius] find[s] that [Defendants] have at any time deleted material off their computer, I just entered sanctions in a case like this the other day, I'll be more than happy to do it for [Symbius], and they won't be easy sanctions, either." *See* 6/24 Trans., Ex. 7.

On July 2, 2014, in response to the Order, Defendants Pearce, Neilson and Choate returned thousands of Symbius confidential documents that they had retained in their possession while competing directly against Symbius for their new employer Wilmington. Stubbs and Haley did not produce any documents in response to the Order. Thus, just one week after filing answers with this Court denying that they had retained any Symbius documents in their possession or control, Neilson returned more than <u>4,500</u> pages of confidential Symbius patient order forms and Choate returned approximately 75 pages of confidential Symbius documents. It is indisputable that Defendants' pleadings contain false statements regarding the key issue in this case.

For almost six months after their initial July 2, 2014 production, Defendants did not produce a single additional document responsive to the Order. On December 24, 2014, without explanation for Defendants' failure to comply with the Order, Defendants' counsel sent a letter notifying Symbius that counsel had recently determined that, just before Neilson and Choate resigned from Symbius, these Defendants obtained copies of a 450 page Symbius sales tracking spreadsheet containing confidential patient health information and referral source information <u>for every new Symbius urology customer from August 2009-January 2014</u> (the "Symbius Referrals Log"), and retained copies of

this Log on their personal Gmail accounts over the past year (while they were actively competing against Symbius). See 12/14/14 Letter, Ex. 8. Defendants' counsel acknowledged in discussions after this disclosure that Neilson had emailed the spreadsheet from his personal Gmail account to Choate's personal Gmail account--a method of transfer that Defendants likely knew that Symbius would be unable to discover through its extensive forensic investigation of Symbius' corporate email server records.

Soon after Choate's and Neilson's December 2014 disclosures, further confirming their failure to comply with the Court's injunction Order, Symbius learned, through more extensive (and expensive) forensic investigations of Stubbs' and Neilson's Symbius laptops, that both Stubbs and Neilson had accessed "Dropbox," a popular electronic file storage site, numerous times from their Symbius laptop computers in the days leading up to their Symbius resignations. See KJ Kuchta Declaration, Ex. 9. Neither Stubbs nor Neilson, however, have ever produced any of the Symbius documents in response to the injunction Order that they surreptitiously uploaded and retained on their Dropbox accounts—instead, <u>both Stubbs and Neilson previously denied having access to any electronic file storage accounts in their Answers to Interrogatories</u>.[2] See Answers to Interrogatories No. 6, Ex. 10.

In this ongoing game of hide-and-seek, Symbius recently learned through its

---

[2] On July 3, 2014, Symbius sent discovery requests to each defendant, specifically requesting, in part, information about any "electronic storage sites" that Defendants' had either subscribed to or participated in any way over the past five years. See Stubbs and Neilson Answers No. 6, Ex. 10. ("Please identify all social networking sites, email accounts, electronic storage sites, or other internet communication forums that you have subscribed to, or participated in any way, for the past five (5) years."). Although both Neilson and Stubbs objected to the term "electronic storage sites" as being "ambiguous," they each answered the Interrogatory (preserving their objections) to list Facebook and LinkedIn accounts (Neilson) and Facebook, LinkedIn, Pinterest, and Instagram accounts (Stubbs). Neither Stubbs nor Neilson identified their "Dropbox" accounts. Id. Conversely, Choate did identify an electronic storage site called "Carbonite," which advertises its similarities to Dropbox, in response to this same Interrogatory, Id.

7

forensic investigation that at 7:40 AM on February 17, 2014, the morning that Stubbs resigned from Symbius, Stubbs transferred a large number of files from her Symbius laptop computer to her personal Dropbox account through her Yahoo! email account. These files included Symbius documents titled "Weekly Fax Log," "Order Log 2011," "Copy of Account Profiles Urology (2)," "Urological Accounts/Stubbs," "Coude Catheter Handout," and other documents only labeled with a series of numbers. *See* Kuchta Declaration, Ex. 9; The file signature on several of these files (including "Urological Accounts/Stubbs" and "Copy of Account Profiles Urology (2)") prove that they originated from the Symbius server. *Id.* Stubbs used the "InPrivate" Internet Explorer option to access her Dropbox account, so that a record of her use of Dropbox would not be recorded on her Internet browser history. *Id.* Stubbs' deliberate attempt to hide her theft of Symbius files--and her later denials of having taken/retained Symbius documents--originally worked as planned, as Symbius' initial review of her Internet history did not reveal her theft.

Symbius' forensic investigation also revealed that, during the two weeks prior to Neilson's resignation, Neilson frequently accessed and used his Dropbox account to upload and store files from his Symbius laptop computer. *See* Kuchta Declaration, Ex. 9. On January 23, 2014, after Neilson had received an offer of employment with competitor Wilmington, Neilson conducted a full backup of the Apple iPhone that he used to conduct Symbius business, which contained Symbius data and contact information for all of Symbius' referral sources in Neilson's territory, and then uploaded this full backup to his personal Dropbox account. *Id.* In violation of the Order, Neilson has not produced any Symbius documents or referral source contact information that he retained and stored on his iPhone account or in either of these two backup files.

Additionally, on January 30, 2014, Neilson reviewed instructions on how to

8

migrate files from a Windows PC (like his Symbius laptop) to an Apple computer or other Apple device through a program called "Migration Assistant," and then completed a System Migration from his Symbius laptop to another device, and then accessed and reviewed a file called "SystemMigration.log." *See* Kuchta Declaration, Ex. 9. On Sunday, February 2, 2014, the day before his resignation, Neilson accessed his Dropbox account and then began transferring hundreds of Symbius "fax" documents (identified by date and identification number) to an external storage drive. *Id.* Neilson made his last upload to his external drive at 10:31 PM, also accessing Dropbox at that time. *Id.* None of these Dropbox document transfers have ever been voluntarily admitted by Nielson.

On February 3, 2014, the day Neilson resigned, Neilson first accessed Dropbox at 5:26 AM, and then accessed it multiple times over the next few hours as he transferred hundreds of Symbius documents (primarily faxed Symbius order forms) to an external storage drive. *See* Kuchta Declaration, Ex. 9. At 7:39 AM, Neilson copied multiple Symbius files including "Copy of New Referrals Tracking Log 2014" (a different file from the recently-disclosed and produced Symbius Referrals Log), "Copy of Account Profiles Dunbar" (Dunbar is a former Symbius territory manager, who was assigned to a different territory than Neilson), "2011 Urology RX Form 1/11," "Copy of New Referrals Tracking March," "New Referrals Tracking Log July Commissions," "New Referrals Tracking Log June Commissions," and "Neilson Sales Symbius." *Id.* To date, Neilson has not produced any of these Symbius documents copied to an external storage drive at 7:39 AM in response to this Court's Order. At 12:43 PM, just nine minutes after he stole a final Symbius patient order form, Neilson emailed his resignation to Symbius. *Id.*

### C. Defendants Violated the Order

To date, Neilson has only disclosed and produced for imaging one of the five electronic storage devices he plugged into his Symbius laptop in the final week of his employment with Symbius. *See* Kuchta Declaration, Ex. 9. Additionally, Neilson and

Choate both failed to timely produce the Symbius Referrals Log, a 450+ page customer and referral source database. Neilson removed the Symbius Referrals Log from Symbius' server four days before his resignation, and then emailed the Log from his personal Gmail account to Choate's personal Gmail account. In late December 2014, Defendants' counsel found evidence of Neilson's and Choate's failures to comply with the Order.

Also in violation of the Order, Neilson has failed to produce additional Symbius documents that he transferred to his personal "Dropbox" account and personal storage drives just before his resignation. Instead, in his Answers to Interrogatories, Neilson played "catch me if you can" and denied he had subscribed to or participated in any electronic storage sites like Dropbox. Similarly, Stubbs transferred several critical Symbius documents to her Dropbox account through her personal email account the morning of her resignation--and then affirmatively denied having a Dropbox account in her Answers to Interrogatories.

To excuse their failures to comply with the Order, Defendants have argued that they "forgot" or "overlooked" the unproduced and undisclosed documents and electronic storage devices. Although "[s]ubstantial compliance with a court's order is a defense to civil contempt," Defendants' failure to produce confidential Symbius documents and their deliberate misrepresentations to Symbius' counsel, their own counsel, and this Court to hide the location and nature of the unproduced documents and devices are not mere technical infractions. *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993) (internal quotations and citations omitted).

Defendants were ordered by this Court to return to Symbius all files in their possession by July 2, 2014. Order, Doc. #34. The supplemental 7/18/14 deadline was intended only to capture any documents that were inadvertently overlooked in the initial

production.³ The documents that Defendants have failed to produce were not exchanged in the ordinary course of their employment with Symbius. These documents were either: (1) deliberately removed from Symbius' server and exchanged between the Defendants after they had already accepted employment with Wilmington or (2) transferred to personal email accounts and Dropbox accounts that Defendants have since denied the existence of in subsequent, verified Interrogatory answers. As a continued affront to this Court and the litigation process, in their Amended Answers filed last month, <u>Defendants – remarkably and despite all evidence to the contrary -- continue to deny to this Court that they retained any Symbius documents after their resignations</u>. *See* Amended Answers, Doc. #79 (Choate), #82 (Neilson), and #81 (Stubbs).

### D. **Defendants Cannot Excuse Their Failure to Comply with the Order**

The Ninth Circuit has held that there is no "good faith" exception to the requirement of obedience to a court order--however, "a person should not be held in

---

³  On July 16, 2014, two weeks after Defendants' initial deadline to produce all Symbius documents in their possession or control, Defendants' counsel contacted Symbius to explain that it was likely that Defendants had certain "Symbius files in their possession that were sent to their personal email addresses in the ordinary course of their employment with Symbius, often by other Symbius employees." See 7/16/14 email, Ex. 11. Defendants' counsel stated that they did not know the extent of such documents, as they had just collected approximately 180,000 emails per the Court's Order to image Defendants' devices. In a good-faith effort to cooperate, Symbius' counsel agreed with Defendants' counsel that any then-unknown emails exchanged between Defendants and other Symbius employees "in the ordinary course of their employment with Symbius" did not fall under the "spirit" of this Court's 6/24/14 Order to return all Symbius documents by the July deadline. *Id.*

Defendants' multiple failures to disclose and return Symbius documents and electronic devices (and their affirmative misrepresentations concerning the existence of such documents), however, are far outside the scope of counsels' good-faith agreement to not demand immediate production of then-unknown documents that may have been provided to Defendants by other Symbius employees in the ordinary course of their employment.

Symbius' counsel believe that Defendants' counsel have represented to Symbius exactly what their clients have told them. This Motion for Contempt is directed against the individual Defendants, not their counsel.

contempt if his action 'appears to be based on a good faith and reasonable interpretation of the [court's order].'" *In re Dual Deck*, 10 F.3d at 685 (quoting *Vertex*, 689 F.2d at 889; *Crystal Palace*, 817 F.2d at 1385) (noting that a finding of willfulness is not required for civil contempt); *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Cir. 1994) ("willfulness is not a necessary element of civil contempt. Accordingly, evidence presented regarding the contemnor's good faith did not bar the conclusion that the contemnor acted in contempt of the consent judgment."). In the present case, Symbius believes it is clear that Defendants did not act reasonably or in good faith in responding to this Court's Order.

In multiple telephone conferences and several email exchanges with Defendants' counsel over the past two months, Defendants' counsel have explained that it was "simple oversight" that caused Defendants to fail to identify and return the above-described Symbius documents and to fail to disclose other documents and devices. However, Defendants' explanations for their multiple failures to admit that they had stolen and retained some of the most confidential and valuable documents to Symbius' business operation (including in written correspondence with Symbius' counsel one week after their resignations from Symbius) are simply not credible. This Court's mandate that Defendants produce all Symbius documents in their possession by July 2014 was very clear—as was this Court's admonition that any failures to comply with the Order would result in severe sanctions. See Order, Doc. #34; Hearing Trans., Ex. 7. Defendants cannot claim they acted reasonably or in good faith to comply with the Order.

In their defense, Neilson and Choate will likely argue as a point in their favor that at least they did produce a significant number of documents in their initial production after this Court's Order. And it is true that, just one week after filing answers with this Court denying that they had retained any Symbius documentsl, Neilson and Choate

returned thousands of highly-confidential Symbius documents.

The <u>total volume</u> of documents returned to Symbius, however, is not the focus of this Motion. Instead, it is important to note that Choate and Neilson only returned documents within the categories of documents that Symbius had <u>already identified</u> as having been stolen in its Motion for Preliminary Injunction. *See* Motion for Preliminary Injunction, [Doc. #19]. In its Motion, Symbius included an excerpt of a third-party preliminary forensic report proving Neilson's theft of approximately one thousand patient medical files and Symbius order forms over the final 24 hours of his employment with Symbius. So--in response to the Order--Neilson produced the corresponding patient order forms. Similarly, Symbius' Motion noted that its forensic report had tracked Defendants' Symbius email account histories, identifying several examples of improper transfers of Symbius documents from Defendants' Symbius accounts to their personal Gmail accounts. In response to the Court's Order, Choate and Neilson returned Symbius documents that they had wrongfully emailed to their personal Gmail accounts from their Symbius email accounts in the days before their resignations. *See* Ex. 12.

Critically, though, <u>neither Neilson nor Choate produced any documents other than the categories of stolen documents that Symbius had already identified in its Motion</u>. Defendants are individuals with direct and personal knowledge of their conduct prior to resigning their positions with Symbius (which was only one year ago)—they are not corporate parties with multiple records custodians defending against a claim spanning multiple years, where complex search terms must be used to determine whether any responsive documents exist. Defendants in this case have personal knowledge of what documents they made an affirmative effort to steal as they headed out the door to Symbius' competitor. Additionally, there is no "long passage of time" to excuse Defendants' apparent group-wide lapses in memories. One week after Defendants'

resignations, Symbius' counsel sent each Defendant a letter requesting that they immediately return any Symbius documents in their possession—Neilson, Choate and Stubbs responded, in writing, that they had not retained any Symbius documents and that they intended to abide by all the obligations set forth in their Employment Agreements. *See* Defendants' Letters, Exs. 3-5.  Defendants' approach to this lawsuit has always been, and continues to be, a cavalier "catch me if you can" attitude.

Moreover, even if Defendants could credibly claim to have "forgotten" that they transferred multiple as-yet-unreturned documents to personal storage devices and accounts, the retained documents contain obvious words and phrases that should have been revealed by even the most cursory keyword search. For example, although the word "Symbius" does not appear in the Symbius Referrals Log, the registered name of Symbius, "PRN," does appear in the log, along with such keywords as "180 Medical" (Symbius' parent company), the names of all five Defendants, words such as "order," "patient name," "referral/doc," "referrals tracking," "product," "insurance," "Medicaid," and other words that should have been included in even the most basic search for improperly-retained Symbius documents. Similarly, the other stolen (and not yet returned) documents include words like "Symbius orders," "order logs," "account profiles urology," and other words that clearly would have been revealed by any reasonably diligent search. Indeed, these are all search terms that counsel have since agreed upon as being relevant and useful in the parties' extensive review of electronically-stored information

As to Neilson and Choate's independent failures to produce the Symbius Referrals Log containing personal and confidential information about every Symbius customer and referral source from 2009 to 2014, as part of their initial production in response to the Order, both Neilson and Choate returned certain Symbius confidential documents that

they had transferred <u>from their Symbius email accounts</u> to their personal Gmail accounts in the days leading up to their resignations. *See* Neilson and Choate emails, Ex. 12. Thus, both Neilson and Choate were indisputably aware of their Gmail accounts as an electronic location containing Symbius documents responsive to this Court's Order. It simply is not credible that they could have both overlooked the Symbius Referrals Log retained in their Gmail accounts, if they had really carried out a good-faith search of their email and electronic storage accounts. Defendants simply did not engage in a "reasonable" search of their Gmail and Dropbox accounts. Instead, they have required Symbius to expend considerable time and significant amounts of money to discover what Defendants themselves were obligated to do in the first place,

In their Original Answers (filed just one day before the Court's hearing on Symbius' Motion for Temporary Injunction), Choate, Neilson and Stubbs made numerous false denials to Symbius' allegations. Defendants unquestionably knew these denials were false at the time they filed their Answers with this Court.[4] On December 23, 2014, Defendants sought leave to amend their Answers to add, among other defenses, an affirmative defense of "failure to mitigate." [Doc. #75]. Instead of correcting their previous misrepresentations to this Court, all five Defendants' First Amended Answers doubled down on their denials of any wrongdoing—continuing to deny that they retained any Symbius confidential documents after their resignations.[5] [Docs. #78-83].

---

[4] For example, Symbius' Amended Complaint alleged that Choate, Neilson and Stubbs had "retained Symbius confidential and proprietary information and documents after their resignation from Symbius." [Doc. #17 at ¶28]. All three defendants flatly denied this specific and narrowly-tailored allegation. [Answers, Doc. #25, #27, #28]. Despite their later, albeit tacit, admission (through production of thousands of Symbius confidential documents in response to the Order) that Neilson and Choate had, in fact, retained confidential Symbius documents after their resignations, none of the Defendants have sought leave to amend their Answers to correct these affirmative misrepresentations.

[5] Although not directly the subject of this Motion, Defendant Pearce also denied in his initial Answer that he had retained any Symbius documents after his resignation, then produced approximately 750 highly-confidential Symbius documents in response to the

15

Defendants' multiple failures to comply with the Order fit within the Defendants' established pattern of litigation misconduct, including making affirmative misrepresentations to Symbius' counsel, their own counsel, and this Court. Defendants, again, are playing "catch me if you can," brazenly denying and covering up all evidence of wrongdoing until such wrongdoing is proven by Symbius' exhaustive internal efforts and <u>substantial financial investments</u> in attorney time and forensic investigations. From the time of Defendants' resignations, Symbius has acted diligently in its significant attempts to mitigate any losses associated with Defendants' wrongful actions and theft of documents. Symbius put Defendants on notice in its June 2014 Motion for Preliminary Injunction that time was of the essence in mitigating the damages caused by Defendants' theft of competitive referral source information and confidential patient health information. Defendants' inexcusable failures to comply with the Order and affirmative concealment, even after they had actual knowledge of the consequences of their failures to comply, caused Symbius to lose the "benefit of the bargain" in its investment into pursuing a temporary injunction against Defendants.

Defendants' violations of the Order significantly hindered Symbius' mitigation efforts with its customers and referral sources. Defendants' affirmative concealment prevented Symbius from: (1) timely reporting to the government the true scope of Defendants' theft of patient health information, (2) preventing Defendants' continued use/dissemination of Symbius confidential information, and (3) addressing damaged referral and customer relationships. Despite their litigation misconduct, Defendants are now requesting that they be permitted to argue that Symbius did not do enough to mitigate their theft of Symbius' entire customer list and referral source documents, while

---

Order, and last month filed an Amended Answer still denying that he had retained any Symbius documents after his resignation.

they secretly continue to retain these documents in undisclosed locations and compete against Symbius in their previously-assigned Symbius territories.

## II. Conclusion

This Court's "power to punish for contempt is inherent in all courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). A court has the discretion to fashion a sanction when faced with contempt or other conduct that abuses the judicial process—depending on the circumstances of an action, sanctions ranging from an assessment of attorney's fees to the dismissal of a lawsuit may be appropriate.[6] *Id.* at 45; *In re Dyer*, 322 F.3d 1178 (9th Cir. 2003)("We emphasize that attorneys' fees are an appropriate component of a civil contempt award."). For the foregoing reasons, Symbius respectfully requests that this Court enter the proposed Order to Show Cause directing Michael Neilson, Kimberly Choate, and Marvelyn Stubbs to appear and show cause as to why they should not be held in contempt for violating and refusing to comply with this Court's 6/24/14 Order.

In the event Defendants do not appear, fail to provide sufficient cause, or continue to defy the Order, Symbius requests that Defendants be held in contempt and that the Court impose sanctions up to and including: (1) all or a portion of the attorneys fees and costs Symbius incurred in drafting and arguing its Motion for Preliminary Injunction as it did not receive the benefit of this Court's Preliminary Injunction and (2) the attorney fees and costs (including forensic IT expert costs) it has expended in obtaining any contempt judgment awarded by the Court. Symbius would also request that the Court strike Neilson's, Choate's, and Stubbs' affirmative defenses asserting that Symbius failed to mitigate its damages after Defendants' abrupt resignations and theft of documents.

---

[6] It is well established in this Circuit that "civil contempt need not be willful to justify a discretionary award of fees and expenses as a remedial measure." *Perry v. O'Donnell*, 759 F.2d 702 (9th Cir. 1985) *see also Lasar v. Ford Motor Co.*, 399 F.3d at 1111 (civil sanction if the award of attorney fees and costs was meant to compensate the opposing party for the unnecessary costs incurred as a result of the contempt).

17

1  Symbius will submit documentation of the fees and costs it has incurred in proving
2  Defendants' failure to comply with the Order at Defendants' show cause hearing or upon
3  this Court's request.
4
5       DATED: February 20, 2015.
6                                                  McAfee & Taft, A Professional Corporation
7
8                                                  By: _s/Lauren Barghols Hanna_____
9
                                                   Sam L. Fulkerson, OBA #14370
10                                                 (admitted *pro hac vice*)
                                                   Lauren Barghols Hanna, OBA #21594
11                                                 (admitted *pro hac vice*)
                                                   2 Leadership Square, 10th Floor
12                                                 211 N. Robinson
                                                   Oklahoma City, Oklahoma 73102
13                                                 Telephone: (405) 552-2343
                                                   Fax: (405) 722-2343
14                                                 sam.fulkerson@mcafeetaft.com
                                                   lauren.hanna@mcafeetaft.com
15
16                                                 and
17
18                                                 BRYAN CAVE LLP, #00145700
                                                   Jay A. Zweig, #011153
19                                                 Melissa R. Costello, #020993
                                                   Two North Central Avenue, Suite 2200
20                                                 Phoenix, Arizona 85004-4406
                                                   Telephone: (602) 364-7300
21                                                 Fax: (602) 716-8300
                                                   jay.zweig@bryancave.com
22                                                 melissa.costello@bryancave.com
23
24                                                 Attorneys for Plaintiff
25
                            **CERTIFICATE OF SERVICE**
26
27  I hereby certify that on this 20th day of February, 2015, I caused the attached document
28  to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing

and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

Edward R. Glady, Jr.
Michael F. Edgell
LEWIS BRISBOIS BISGAARD & SMITH LLP
Phoenix Plaza Tower II
2929 North Central Avenue, Suite 1700
Phoenix, AZ 85012-2761
Firm email:    azdocketing@lbbslaw.com

and

Michael DeLarco
David Baron
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
michael.delarco@hoganlovells.com
david.baron@hoganlovells.com

**ATTORNEYS FOR DEFENDANTS**

*s/Lauren Barghols Hanna*
Lauren Barghols Hanna